Goodpasture et ux. *v.* Simpson et al., Appellants.

Argued April 11, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Earl V. Compton,* for appellants.

*Thos. D. Caldwell,* of *Caldwell, Fox & Stoner,* for appellees.

OPINION BY MR. JUSTICE MAXEY, May 9, 1938:

Plaintiffs brought an action in trespass against defendants on account of injuries received by the minor plaintiff, Nancy J. Goodpasture, who was 18 years of age at the time of the accident.

The statement set forth that at about 5:15 p. m., on July 20, 1936, at a point in Lower Paxton Township, Dauphin County, on Pennsylvania Highway Route No. 22, a truck belonging to John W. Sterling and being driven by his agent or employee, was proceeding in an easterly direction. Immediately in front of the Sterling truck and proceeding in the same direction was a truck and trailer (sometimes referred to herein as the equipment) belonging to the Department of Highways of the State of Pennsylvania, the truck being driven by defendant Todd and the trailer being in charge of defendant Simpson. At the same time and place, an automobile belonging to George C. Bannon was being driven in a westerly direction by Nancy J. Goodpasture, the minor plaintiff. When this automobile was abreast of the truck and trailer, a large block of wood, measuring 12 inches by 12 inches by 37 inches, fell from the latter directly into the path of the Bannon automobile, which immediately came into collision with it and was thrown across the highway. As a further result the Bannon automobile came into collision with the left front of the Sterling truck and as a consequence the minor plaintiff was severely injured.

The negligence charged against Todd was driving the truck at an excessive rate of speed and failing to have it under proper and adequate control, and with driving the truck in such a manner that it caused the block of wood to fall from the trailer. Defendant Simpson was

charged with negligence in that he failed to keep the block of wood from falling from the trailer.

Defendants showed that the equipment was loaded at the Highway Storage Shed under the supervision of the Department Foreman. The latter directed defendant Todd to operate the truck and defendant Simpson to operate the brake on the trailer and directed three additional employees to ride upon the trailer, two of whom were to act as flagmen. The foreman testified that before he permitted the equipment to be taken out on the highway he "walked around" it and "looked it all over." He said, "All right, go ahead." Both defendants and the other employees denied knowledge of the block of wood being upon the trailer. At the close of the testimony, defendants submitted a request for binding instructions, which was refused. The jury brought in a verdict in the sum of $715 in favor of Frank Goodpasture and Hazelle Goodpasture, his wife, for expenses incurred in the automobile accident, and in the sum of $6,000 in favor of the minor plaintiff, Nancy J. Goodpasture. Defendants' motions for judgment n. o. v. and for a new trial were overruled. Judgment was entered upon the verdict and this appeal followed.

The legal question presented is whether or not the driver of the truck and the brakeman on the trailer are liable for damages resulting to a third person in permitting a large block of wood to fall from the trailer. Appellees in their paper book say: "We have chosen to sue the servants in a situation where the master would have been responsible through imputed negligence. . . . This was necessary because the equipment was owned by the Commonwealth of Pennsylvania and hence a suit against the master would not lie."

The trailer from which the block of wood fell had no sideboards and the inference is legitimate that if it was on the trailer, as claimed and as the jury found, it must have been in plain view of all the occupants of the truck and trailer for some time before it fell. At the place

where the accident occurred, the concrete highway is eighteen feet in width. The equipment was proceeding, with considerable vibration, in an easterly direction down a 5% grade. On the trailer there was a caterpillar tractor which was held in place by a block of wood. The man in charge of the Highway Storage Shed testified that "the tractor was run up over the skids, on the trailer, and . . . they jammed two blocks of wood underneath the tracks. The end blocks were spiked down." He was asked: "Was there any other equipment of any kind, any blocks or anything of that sort, on the trailer that day?" He replied: "There were blocks run in underneath the tractor, in between the treads, slid in underneath. . . ." He said that there were no other blocks on the trailer except for "the four blocks on the back" which "held the tractor in place." The truck and trailer, together with the caterpillar tractor on the trailer, weighed 26 tons.

At the trial plaintiffs called three witnesses who testified that they saw the block of wood fall from the left side of the back of the trailer. A boy, aged 12 years, who was sitting in his father's truck immediately back of the highway equipment, testified that he saw the block fall, and saw the front wheels of the automobile hit the wooden block "and the tire blew out; it jumped up in the air and it came across and hit our truck." There were other witnesses to the accident who saw the Bannon car "hit an object and rise in the air." The witnesses who saw the block of wood fall off the equipment identified the block of wood which was introduced in evidence at the trial as being the same block with which the automobile driven by the minor plaintiff collided.

At the time of the trial the defense denied that the block of wood in question was on the trailer or fell off the highway equipment. That raised a question of fact and the verdict indicates that the jury accepted plaintiffs' and not the defendants' testimony. The proposition of the appellants now is that taking the testimony

adduced on behalf of the plaintiffs at its face value, a case of negligence was not made out.

The court below in its opinion discharging the motions for judgment n. o. v. and for a new trial, aptly said, after discussing the case of *East Broad Top Transit Co. v. Flood,* 326 Pa. 353, 192 A. 401: "In our cases [i. e., the cases at bar] there was no presence of any mechanical device under the control and for whose proper repair the master alone was responsible, but on the contrary there was a huge block of wood plainly in view from the start to the moment of its falling off the trailer, which could not have escaped notice on the most casual inspection by anyone having anything to do with the equipment. . . . 'When the thing which causes the injury is shown to be under the management of the defendant and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from a want of care': *Shafer v. Lacock, Hawthorn & Company,* 168 Pa. 497, 504 [32 A. 44]."

In *Janock v. B. & O. R. R. Co.,* 252 Pa. 199, 97 A. 205, this court said: "Granting the burden was on plaintiff to furnish evidence of negligence beyond the mere fact of the happening of the accident, it is not, however, necessary in all cases to prove negligence by positive evidence. There are many instances where the burden resting on plaintiff may be met by proof of circumstances from which the jury are permitted to infer negligence on the part of defendant." See also *Maerkle v. Pittsburgh Rys. Co.,* 311 Pa. 517, 165 A. 503.

The distinction between the *East Broad Top Transit Co. v. Flood,* supra, upon which case appellants strongly rely, and the case at bar is obvious. Appellants say: "As in that case [i. e., the case just cited], the servant here was justified in relying upon the device which his employer had furnished. We submit that here the de-

fendant (driver of the truck) being furnished by his employer with the equipment and load which had been inspected by the employer, 'was justified in relying upon it' being in proper condition." In the *Flood Case,* it was stated in the opinion of this court: ". . . it was possible for the jury to find that the accident was caused, not by any negligence of Flood in the operation of the truck, but by that of his employer in not having the signal light in working condition. With such a device on the truck the driver was justified in relying upon it and not employing other means of notifying approaching traffic of his intention to change his course. There was evidence that although he operated the switch the signal did not flash. This established a prima facie case against appellant because of the defective mechanism and justified a verdict against it on the basis of a primary liability." Applying this principle to the instant case, if the falling of the block of wood was due to some defective mechanism or to some defect in the manner of securing the block of wood to the trailer, and if no negligence could be imputed to the servants in relying on the mechanism or on the method of securing the block, a verdict against the master on the basis of a primary liability would be justified. Plaintiffs' theory in this case is that the unsecured block of wood was so *patently* dangerous that the defendants should have refused to proceed with it in that condition or have secured it or have proceeded with it with the care obviously required.

The verdict of the jury indicates that it found this block of wood was a part of the equipment in defendants' charge, regardless of how it got there, that being so it was "under the eye" of the defendants, and that through the negligence of one of them in driving the truck and of the other in not sufficiently safeguarding the block, the latter was hurled from the trailer causing the injuries complained of. All these findings were, under the evidence, well within the jury's province.

In *Bisson v. Kelly*, 314 Pa. 99, 170 A. 139, we quoted with approval the following from *Collins v. Hustis*, 79 N. H. 446, 111 A. 286: "All foreseeable dangers are to be considered in the solution of the problem whether the creation of the situation was a negligent act." Applying this to the case at bar: if the block of wood was on the trailer (and the jury found that it was), the duty of foreseeing the likelihood of its falling off and doing damage and of taking appropriate action to prevent its falling off was the defendants'. In *Koelsch v. The Philadelphia Co.*, 152 Pa. 355, 363, 25 A. 522, this court said: "While no absolute standard of duty in dealing with such agencies [i. e., dangerous agencies] can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken." We also said in the *Bisson Case*, supra: "A hollow tile, a foot square, three inches wide, and weighing twenty pounds, placed in a position where it is likely to fall fourteen feet on human beings comes within the description of 'a dangerous agency.' " By parity of reasoning, we hold that a heavy block 12 inches by 12 inches by 37 inches *unfastened* on a rapidly moving vehicle in a position where it is likely to fall causing injury to human beings comes under the description of "a dangerous agency," and that these two defendants who had this dangerous agency under their control are justly held responsible for its falling off the trailer under the circumstances here present. What we said in the *Bisson Case* (supra), we repeat here: "It is a primary social duty of every person to take thought and have a care lest his action [or nonaction] result in injuries to others. This social duty the law recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission

which he, as a reasonable human being, should have foreseen. The question whether a person charged with negligence or negligent acts or omissions should have foreseen the injuries resulting from those acts or omissions is for the jury, if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of neglect of duty. 'A verdict should not be directed if on all the facts and circumstances there is room for fair and sensible men to differ in their conclusions': *McCracken v. Curwensville Boro.,* 309 Pa. 98, 114, 163 A. 217. Measured by this testing standard the instant case was for the jury."

The judgments are affirmed.